# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:

RODNEY RAY VERMILIO,   Case No. 6:09-bk-17180-ABB
                       Chapter 7
    Debtor.
_____/

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

    Plaintiff,   Adv. Pro. No. 6:10-ap-00062-ABB

v.

RODNEY RAY VERMILIO,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Complaint Seeking Exception to Discharge (Doc. No. 1) filed by Plaintiff Commonwealth Land Title Insurance Company against Defendant/Debtor Rodney R. Vermilio ("Vermilio") seeking a nondischargeability determination pursuant to 11 U.S.C. 523(a). The final evidentiary hearing was held on December 20, 2010 at which the parties and their counsel appeared. They submitted post-hearing briefs pursuant to the Court's directive (Doc. Nos. 38, 39).

Judgment is due to be entered in favor of Plaintiff and against Vermilio for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Plaintiff's Case in Chief*

Plaintiff refers to 11 U.S.C. Section 523(a)(2) in its Complaint without specifying the applicable specific subsection. This proceeding involves Section 523(a)(2)(A) and Section 523(a)(2)(B) causes of action. Plaintiff established the following facts in its case in chief through the presentation of its witness Nicole Daruszka ("Daruszka"), the President of Cosmopolitan Title Agency ("Cosmopolitan"), and Plaintiff's documentary evidence. Daruszka's testimony was credible.

Vermilio owned two residential properties individually in 2006 which are relevant to this adversary proceeding: (i) 2304 Bonanza Avenue, Winter Park, Florida 32792 located in Seminole County ("Bonanza Avenue"); and (ii) 145 Halifax Avenue North, No. 606, Daytona Beach, Florida 32118 located in Volusia County ("Halifax Avenue"). Vermilio is in the construction business and has invested in real estate over the years, buying and selling various properties in Central Florida. He has attended many real estate closings. Daruszka, through Cosmopolitan, has conducted approximately ten closings for Vermilio's real estate transactions.

Vermilio executed a Purchase Contract on November 11, 2006 pursuant to which he agreed to sell Bonanza Avenue to Theresa and Donald Layton (the "Purchasers").[1] Vermilio, pursuant to the Purchase Contract, agreed to convey Bonanza Avenue to the Purchasers unencumbered by any liens, except for liens for current and future real estate taxes. Bonanza Avenue was encumbered by a mortgage held by Paramount Financial, Inc. (the "Paramount Mortgage") which was serviced by Select Portfolio Servicing ("Select"). No other mortgages encumbered Bonanza Avenue.

---

[1] Pl's Ex. 1.

Cosmopolitan was the closing agent for the Bonanza Avenue sale and Daruszka conducted the closing. Vermilio provided to Cosmopolitan a loan number of 0010034080 and Select's contact information. Cosmopolitan understood the loan number of 0010034080 was for the Paramount Mortgage. Cosmopolitan's closing processor sent a payoff request to Select to obtain the mortgage payoff amount for Bonanza Avenue.[2] Select sent a statement to Cosmopolitan setting forth a payoff amount of $237,076.80 for loan number 0010034080.[3]

The sale closing was conducted by Cosmopolitan at its offices on December 21, 2006 at which the Purchasers and Vermilio were present. Vermilio executed the customary closing documents including:

(i) the HUD-1 Settlement Statement[4];

(ii) the Warranty Deed pursuant to which he warranted he was transferring Bonanza Avenue to the Purchasers free of all encumbrances, except for real estate taxes accruing subsequent to December 31st, 2006[5]; and

(iii) the Payoff Affidavit.[6]

Vermilio agreed, pursuant to the Payoff Affidavit, to hold Cosmopolitan and Plaintiff "harmless for any additional monies due for payoff of the mortgage(s) to Select," and "that if for any reason the payoff is incorrect, we are fully responsible for making up the difference and will promptly take care of the matter as not to result in any additional interest due."[7]

---

[2] Pl's Ex. 4.
[3] Pl's Ex. 6.
[4] Pl's Ex. 2.
[5] Pl's Ex. 7.
[6] Pl's Ex. 8.
[7] Id.

Plaintiff is a title insurance company which issued two policies in connection with the Bonanza Avenue closing: (i) an ALTA Owners' Commitment for Title Insurance in the amount of $280,000.00 in favor of the Purchasers ("Owners' Policy"); and (ii) an ALTA Lenders Commitment in the amount of $305,900.00 in favor of the Purchasers' lender, Mortgage IT, Inc.[8] The policies do not list the Paramount Mortgage as an exclusion from coverage. The Paramount Mortgage needed to be fully satisfied as a condition of the Bonanza Avenue sale.

The HUD-1 Settlement Statement provided for the payoff of the "first Mortgage to Select" at Line 504 in the amount of $237,076.80. Cosmopolitan issued payment to Select in the amount of $237,076.80 for payment in full of the Paramount Mortgage. Cosmopolitan believed the Paramount Mortgage had been fully satisfied upon transmission of the payoff funds.

Daruszka received a telephone call approximately two months after the Bonanza Avenue closing informing her there was a problem with the closing in that the Paramount Mortgage had not been satisfied. Daruszka investigated the matter and learned Cosmopolitan had paid off the mortgage encumbering Halifax Avenue and not the Paramount Mortgage. The payoff information received from Select, which also serviced the Halifax Avenue mortgage, was for the Halifax Avenue mortgage and not the Paramount Mortgage. The Paramount Mortgage continued to encumber Bonanza Avenue while the Halifax Avenue mortgage had been fully satisfied through the funds transmitted by Cosmopolitan.

Cosmopolitan attempted to communicate with Select to correct the error, but Select would not discuss the matter with Cosmopolitan without Vermilio's written

---

[8] Pl's Ex. 3.

4

authorization. Cosmopolitan made many attempts to contact Vermilio, but he was unresponsive. Cosmopolitan sent Vermilio a series of faxes in March and April 2007 requesting he sign an authorization allowing Cosmopolitan to discuss his mortgage account information with Select.[9] Daruszka attempted to reach Vermilio by telephone without success. Cosmopolitan's initial faxes erroneously referenced a property Vermilio did not own and no response was received to the initial faxes except a handwritten note asking, "Whose is this?"[10]

Cosmopolitan received Vermilio's written Authorization on or about April 26, 2007 and transmitted it to Select.[11] Cosmopolitan communicated with Select, but was unable to resolve the matter. Cosmopolitan learned through a public records search Vermilio had obtained a new mortgage on Halifax Avenue after the Bonanza Avenue closing. Vermilio executed a Home Equity Line of Credit Mortgage for $200,000.00 in favor of Citibank, Federal Savings Bank on April 20, 2007, which was recorded against Halifax Avenue on May 11, 2007.[12] Vermilio withdrew $197,405.00 from the line of credit via wire transfer to his bank account on or about April 20, 2007.[13]

Cosmopolitan's payoff of the Halifax Avenue mortgage had resulted in the Halifax Avenue property being unencumbered by any mortgage lien, but Halifax Avenue, as of May 11, 2007, was encumbered by the Citibank mortgage lien. Vermilio did not refund any monies to Cosmopolitan to remedy the payoff problem. Daruszka, given her extensive previous dealings with Vermilio, was surprised at his lack of cooperation. Cosmopolitan had no other occasions of erroneous information involving Vermilio's

---

[9] Pl's Exs. 9, 10, 11, 12, 13.
[10] Pl's Exs. 9, 10.
[11] Pl's Ex. 13.
[12] Pl's Ex. 14.
[13] Pl's Ex. 17.

prior real estate closings. She kept expecting Vermilio to resolve the problem and waited until June 2007 to report the matter to Cosmopolitan's errors and omissions insurance carrier. Cosmopolitan and the Purchasers relied on the promises Vermilio made in the closing documents. Their reliance was justified and reasonable.

The Purchasers made a claim against their Owners' Policy for the unsatisfied Paramount Mortgage. Plaintiff paid the claim by satisfying the Paramount Mortgage in the amount of $238,500.00. Plaintiff is subrogated to the rights of the Purchasers pursuant to the title insurance policies.

Plaintiff instituted a civil action against Vermilio in the Florida State Court, *Commonwealth Land Title Insurance Company v. Rodney R. Vermilio*, Case No. 2007-33056-CICI, and was awarded three judgments against Vermilio: (i) Judgment of Liability and Establishing Lien Upon Real Property; (ii) Final Money Judgment and Reaffirming Lien Upon Real Property for $278,160.15, plus interest; and (iii) Final Judgment Awarding Attorneys' Fees in the amount of $28,524.73, plus interest.[14]

### *Motion for Judgment as a Matter of Law*

Plaintiff rested upon the conclusion of Vermilio's cross-examination of Daruszka. Vermilio made an *ore tenus* motion for the involuntary dismissal of Plaintiff's Complaint. Vermilio's motion constitutes a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), which is applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9023.

Plaintiff seeks to have the indebtedness arising from its payment of the Purchasers' title insurance claim deemed nondischargeable pursuant to Section

---

[14] Pl's Exs. 18, 19, 20.

523(a)(2)(A) and Section 523(a)(2)(B). Plaintiff, to prevail, must establish by a preponderance of the evidence all of the elements of a Section 523(a)(2)(A) or a Section 523(a)(2)(B) cause of action. The threshold element for both causes of action is fraudulent intent. Plaintiff must establish by a preponderance of the evidence Vermilio made a false representation in connection with the Bonanza Avenue closing with the purpose and intent to deceive the Purchasers or Plaintiff. Plaintiff's case in chief would have been stronger had it called Vermilio as a witness.

The circumstantial evidence of Plaintiff's case in chief establishes Vermilio acted with fraudulent intent with respect to the Bonanza Avenue closing. Vermilio presented an incorrect loan number to Cosmopolitan which led to the wrong mortgage being satisfied at the Bonanza Avenue closing. Vermilio's course of conduct establishes he intentionally presented the loan number for the Halifax Avenue mortgage to Cosmopolitan and did not intend to transfer marketable title to Bonanza Avenue to the Purchasers.

Despite Vermilio's written promise to cooperate and remedy any payoff error, he failed to respond to Cosmopolitan's many attempts to communicate with him by fax and telephone. Vermilio finally responded to Cosmopolitan's communications in late April 2007 by presenting to Cosmopolitan his signed Authorization. Vermilio did not transmit his signed Authorization to Cosmopolitan until *after* he had executed the Citibank mortgage and had withdrawn $197,405.00 from the $200,000.00 mortgage line of credit. He deposited the funds into his personal checking account. He did not use any of the funds to remedy the payoff error. He made no attempt to remedy the payoff problem.

The payoff problem was correctible until Vermilio encumbered Halifax Avenue with a new mortgage. Vermilio knew when he obtained the Citibank mortgage and drew down the line of credit the Halifax Avenue mortgage had been paid in error by Cosmopolitan. He knowingly and intentionally exploited that error.

Plaintiff's presentation was sufficient to establish a *prima facie* case pursuant to Section 523(a)(2)(A) and Section 523(a)(2)(B). Plaintiff presented sufficient evidence upon which the Court can properly enter judgment in favor of Plaintiff. Vermilio's motion for judgment as a matter of law is due to be denied.

### *Vermilio's Presentation*

Vermilio testified in his case in defense. He testified he: (i) called Daruszka three or four times to discuss the mortgage payoff error, but she failed to respond to his calls; (ii) continued to make payments on the Bonanza Avenue mortgage post-closing because he did not want his credit damaged; (iii) paid $4,242.11 to Daruszka to help remedy the payoff error; (iv) received Cosmopolitan's faxes, but threw them away because they did not appear to relate to any property he owned; and (v) "refinanced" Halifax Avenue only after he had made many attempts to resolve the payoff error.

His testimony was not credible and is contradicted by the documentary evidence and Daruszka's testimony. His presentation further established the nondischargeability elements of 11 U.S.C. Section 523(a)(2)(A) and Section 523(a)(2)(B).

Vermilio is sophisticated and experienced with real estate matters. He read and understood the closing documents he executed. He understood the Paramount Mortgage had to be satisfied to convey marketable title to the Purchasers. He understood he was obligated to cooperate with Cosmopolitan and remedy any payoff errors.

Vermilio made false representations with the intent to deceive the Purchasers and Plaintiff when he transmitted the incorrect loan number to Cosmopolitan and executed the closing documents. His course of conduct establishes he intentionally gave the incorrect loan number to Cosmopolitan. He intended for the Halifax Avenue mortgage to be satisfied instead of the Paramount Mortgage. He went to the closing knowing the Paramount Mortgage would not be paid off and the Purchasers would not obtain marketable title.

Vermilio continued making payments on the Paramount Mortgage post-closing. He, by making such payments, acknowledged the mortgage had not been satisfied at closing and continued to encumber Bonanza Avenue. He actively concealed the continued encumbrance of the Paramount Mortgage on Bonanza Avenue by making payments on that mortgage post-closing.

Vermilio knew the payoff of the Halifax Avenue mortgage would create substantial equity in Halifax Avenue. He extracted that equity by encumbering Halifax Avenue with the Citibank mortgage and immediately transferring $197,405.00 from the credit line to his bank account. He used the funds for his personal gain. There was no evidence presented Vermilio made any payments on the original Halifax mortgage serviced by Select that was satisfied by Cosmopolitan through the Bonanza Avenue closing. The absence of any such payment evidence reflects Vermilio had the knowledge and intent to have that mortgage satisfied through the Bonanza Avenue closing.

The Purchasers and Plaintiff relied on the false representations made by Vermilio. The Purchasers accepted the Warranty Deed believing Vermilio was conveying marketable title to Bonanza Avenue to them. Plaintiff issued the Owner's Policy to

9

Purchasers without an exception for the Paramount Mortgage. Their reliance was justified. The Purchasers and Plaintiff were damaged by Vermilio's intentional actions. Plaintiff sustained monetary losses to satisfy and release the Paramount Mortgage.

Plaintiff has established by a preponderance of the evidence the indebtedness owed to it by Vermilio pursuant to the Judgments entered by the Florida State Court is nondischargeable pursuant to Section 523(a)(2)(A) and Section 523(a)(2)(B) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). Plaintiff has presented Section 523(a)(2)(A) and Section 523(a)(2)(B) causes of action.

### *11 U.S.C. Section 523(a)(2)(A)*

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud by a preponderance of the evidence to prevail: (1) Vermilio made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a

result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996).

The cornerstone element in a Section 523(a)(2)(A) proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish nondischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994) A debtor's silence constitutes a false representation where the debtor had a duty to disclose material facts and she, motivated by an intent to deceive, failed to disclose those facts. In re Eashai, 87 F.3d 1082, 1089 (9th Cir. 1996).

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

*11 U.S.C. Section 523(a)(2)(B)*

Section 523(a)(2)(B) excepts a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by:

(B) use of a statement in writing—

    (i)    that is materially false;

    (ii)    respecting the debtor's or an insider's financial condition;

    (iii)    on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv)    that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). The "intent to deceive" analysis employs the same intent analysis employed in a Section 523(a)(2)(A) determination and may be established by the totality of the circumstances. In re DeJulio, 322 B.R. 456, 461 (Bankr. M.D. Fla. 2005). A plaintiff must also establish causation—that it sustained a loss as a result of the representation, which is an implied element of Section 523(a)(2)(B). Collins v. Palm Beach Sav. & Loan (In re Collins), 946 F.2d 815, 816 (11th Cir. 1991).

### *Motion for Judgment*

The Debtor's motion for an involuntary dismissal of Plaintiff's Complaint constitutes a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.[15] U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 992 n.9 (11th Cir. 1993). Rule 50(a) is applicable to bankruptcy proceedings pursuant to Federal Rule of Civil Procedure 9023. Fed. R. Bankr. P. 9023(a); In re Diagnostic Instrument Grp., Inc., 283 B.R. 87, 93 (Bankr. M.D. Fla. 2002). "[A] trial court must direct a verdict if under the governing law there can be but one reasonable conclusion as to the verdict." In re Diagnostic, 283 B.R. at 93.

Plaintiff presented sufficient evidence in its case in chief to establish the nondischargeability elements of Section 523(a)(2)(A) and Section 523(a)(2)(B). The circumstantial evidence establishes Vermilio intentionally gave Cosmopolitan incorrect

---

[15] Vermilio cites to Federal Rule of Civil Procedure 41(b) in his post-hearing brief, which is applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7041. Federal Rule of Civil Procedure 41(b) is not applicable to this adversary proceeding because it governs involuntary dismissals based upon a plaintiff's failure to prosecute a proceeding or to follow Court rules. Zorcaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006); In re Inman, 260 B.R. 233, 236-37 (Bankr. M.D. Fla. 2000).

loan information for the Bonanza Avenue closing which caused Cosmopolitan to pay off the Halifax Avenue mortgage. Vermilio exploited that error to his own benefit and to the detriment of the Purchasers and Plaintiff. Vermilio's motion for judgment as a matter of law is due to be denied.

### *Dischargeability Analysis*

Vermilio covenanted to convey marketable title to Bonanza Avenue to Purchasers pursuant to the Sale Contract and Warranty Deed. The Purchasers executed the Sale Contract and consummated the sale closing relying upon Vermilio's covenant and expected to obtain marketable title to Bonanza Avenue. Vermilio was contractually obligated to convey marketable title to Bonanza Avenue and to remedy any closing payoff errors. Plaintiff issued title policies for Bonanza Avenue in reliance upon Vermilio's covenants. The Purchasers' and Plaintiff's reliance was justified and reasonable.

Vermilio falsely represented in the Sale Agreement and closing documents he would transfer marketable title to Bonanza Avenue to the Purchasers. He did not intend to transfer marketable title to the Purchasers. Vermilio knowingly provided an incorrect loan number to Cosmopolitan with the intention the Halifax Avenue Mortgage and not the Paramount Mortgage would be satisfied at closing. Vermilio withheld material information at the closing and consummated the closing knowing the Paramount Mortgage would not be satisfied and would continue to encumber Bonanza Avenue.

Vermilio's omissions and misrepresentations were intentional and motivated by his desire to have the Halifax Avenue mortgage satisfied to extract the equity in Halifax Avenue through a home equity line of credit. His course of conduct establishes his

fraudulent intent. He continued to make payments on the Paramount Mortgage post-closing to conceal its continued encumbrance on Bonanza Avenue. He did not respond to Cosmopolitan's pleas for assistance until after he had executed the Citibank mortgage and extracted the equity from Halifax Avenue. He made no attempt to resolve the payoff problem and expended all of the line of credit funds on personal expenses. The totality of the circumstances establishes Vermilio acted with the intent to deceive the Purchasers and Plaintiff.

Plaintiff has suffered damages as a result of their reliance on Vermilio's misrepresentations. It paid the Purchasers' title insurance claim by satisfying the Paramount Mortgage and incurred attorneys' fees and costs in the Florida State Court litigation it instituted against Vermilio. Plaintiff's damages are set forth in the Judgments entered by the Florida State Court in favor of Plaintiff and against Vermilio.

Plaintiff has established by a preponderance of the evidence each of the nondischargeability elements of 11 U.S.C. Section 523(a)(2)(A) and Section 523(a)(2)(B). The indebtedness owed by Vermilio to Plaintiff pursuant to the Judgments entered by the Florida State Court is nondischargeable pursuant to Sections 523(a)(2)(A) and 523(a)(2)(B).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Vermilio's *ore tenus* motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) and Federal Rule of Bankruptcy Procedure 9023 is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiff's Complaint (Doc. No. 1) is hereby **GRANTED** and the indebtedness owed by Vermilio to Plaintiff is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A) and Section 523(a)(2)(B).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 28TH day of February, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge